■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE HUAROTTE, Appellant.—Judgment, Supreme Court, New York County (Clifford A. Scott, J.), entered September 18, 1985, which convicted the defendant, following a jury trial, of the crime of robbery in the first degree (Penal Law § 160.15 [4] [two counts]), and sentenced him to concurrent indeterminate terms of imprisonment of 8⅓ to 25 years on each count, is unanimously reversed, on the law and on the facts, and the matter is remanded for a new trial.

On or about February 13, 1985, the defendant, who was approximately 30 years of age, was arrested at 316 West 93rd Street, New York County, for the February 8, 1985 robbery of Messrs. Segundo Humberto Araujo (Mr. Araujo) and Alberto Castanueva (Mr. Castanueva), who was Mr. Araujo's friend. Thereafter, in a two-count indictment, defendant was charged with those crimes.

Prior to the testimony of any witnesses, defense counsel, *inter alia,* moved, pursuant to *People v Sandoval* (34 NY2d 371 [1974]) to, in substance, prevent the prosecutor from inquiring of the defendant on cross-examination about any aspect of defendant's two prior felony convictions, which concerned the crimes of robbery and the criminal possession of a gun, and the trial court denied that motion.

At the jury trial, which commenced July 31, 1985 and concluded August 6, 1985, the People presented the only evidence, since the defense rested at the close of the People's case.

The People's evidence against the defendant primarily consisted of the testimony of victim Mr. Araujo and of New York City Police Detective Chris Surillo (Detective Surillo).

According to Mr. Araujo's testimony, he was 62 years old, and had resided in an apartment at 230 West 97th Street in New York County for approximately 19 years. In either 1981 or 1982, defendant rented a room in the witness' apartment for about a year. After he moved out, the witness did not see defendant again until the robbery, and, the witness knew defendant by the nickname "Quique". In pertinent part, Mr. Araujo testified about the circumstances of the robbery as follows: at about 8:45 P.M., on February 8, 1985, he was watching television in the apartment with Mr. Castanueva, when the defendant walked in. Thereafter, the defendant asked the witness for a $40 loan, which he refused. Following this refusal, defendant, whose eyes were bulging and whose breath smelled of alcohol, suddenly thrust his hand into his pocket, and said "You know what I have here"; and defendant placed something against the witness' body that felt "like a gun" and repeated his demand for money. Subsequently, defendant pushed Mr. Araujo down on a sofa. Then, defendant turned his attention to Mr. Castanueva, and pointing the object, in his pocket, at Mr. Castanueva, he removed $5 from Mr. Castanueva's pocket. Next, while the defendant walked behind a curtain, which separated the room into sections, so that he could remove coins from jars the witness kept on his dresser, Mr. Araujo fled from the apartment, and reported the robbery to a police officer he met on 100th Street. Mr. Araujo testified that, during the robbery, Mr. Ivan Pujadas (Mr. Pujadas), who was a tenant of the witness, appeared at the door of the subject room, and "asked if I [the witness] was in a problem", and the defendant ordered Mr. Pujadas out of the room, and closed the door after Mr. Pujadas exited.

Detective Surillo testified, in substance, that on the evening of February 8, 1985 he interviewed Messrs. Araujo and Pujadas about the robbery. Several days later, on February 12, 1985, based upon information Detective Surillo had received, he went to apartment 3B, located in 316 West 93rd Street, to look for the defendant. At that location, he identified himself as a police officer to a person, who at that time he did not know was the defendant, and told him he was looking for someone named "Quique" in connection with a robbery complaint of Mr. Araujo. Without indicating he was "Quique", defendant informed the detective that he knew Mr. Araujo, and that "Quique" was his (defendant's) brother, but he was not at home. Later on that day, the witness obtained a photograph of defendant and realized "[t]hat it was the same individual I talked to earlier that day"; and, on February 13,

1985, the detective returned to the subject apartment and arrested defendant.

Neither a gun nor the proceeds of the robbery was ever recovered.

The defendant contends on appeal, in substance, (1) the trial court's *Sandoval* ruling, discussed *supra,* was erroneous; (2) the trial court erred in refusing the defense's request to give a missing witness charge concerning Mr. Pujadas; (3) defendant's sentence is excessive; (4) the trial court improperly responded to the request of the jury by submitting written instructions to them on several occasions, either over the objection of defense counsel, or outside the presence of the defendant, or without prior notice to defense counsel; and (5) the trial court coerced a verdict by its supplemental jury instructions. After examining the record, we find defendant's contentions numbered 1, 2, and 3, *supra,* to be without merit, but we find merit in defendant's contentions numbered 4 and 5, *supra,* based upon the reasons set forth in the discussion, *infra.*

Following the completion of the trial court's oral instructions, on the morning of August 6, 1985, the jury retired to commence deliberations. In the course of their deliberations, the jurors asked the trial court to have certain portions of the trial testimony reread to them, and, in substance, to reinstruct them on the crime of robbery in the first degree. After the testimony had been reread, the trial court admitted to the defense counsel and the defendant that earlier the court had given a written copy of its oral instructions on the crime of robbery in the first degree to the jury, without notice to, and outside the presence of, defense counsel as well as that of the defendant. Upon learning the trial court had provided the jury with written instructions, in the absence of the defense, the defense counsel promptly moved for a mistrial, which motion the trial court denied.

Subsequently, during further deliberations, the jury requested the trial court to provide them with the "exact wording in writing as to the intoxication, referring to intent". In response, the trial court had delivered to the jury a written copy of the portion of its oral instructions on intoxication and intent. Thereupon, defense counsel again moved for a mistrial, and, the trial court once more denied that motion.

Examination of "[t]he Criminal Procedure Law [indicates it] is silent as to the submission of the court's instructions in writing" *(People v Owens,* 69 NY2d 585, 589-590 [1987]). CPL

310.30, entitled: "Jury deliberation; request for information", states, in pertinent part: "At any time during its deliberation, the jury may request the court for further instruction or information with respect to the law, with respect to the content or substance of any trial evidence, or with respect to any other matter pertinent to the jury's consideration of the case. Upon such a request, the court must direct that the jury be returned to the courtroom and, *after notice to both the people and counsel for the defendant, and in the presence of the defendant,* must give such requested information or instruction as the court deems proper" (emphasis supplied).

We find the court erred in submitting written instructions on the crime of robbery in the first degree without notice to defense counsel and outside such counsel's presence, as well as that of defendant. A unanimous Court of Appeals in *People v Mehmedi* (69 NY2d 759, 760 [1987]), held, in pertinent part:

"Failure to comply with the statutory mandate of CPL 310.30 results in a substantial departure from a statutory provision that affects ' "the organization of the court or the mode of proceedings prescribed by law" ' *(see, People v Ahmed,* 66 NY2d 307, 310) * * *

"A defendant has a fundamental right to be present at all material stages of a trial *(see, People v Ciaccio,* 47 NY2d 431, 436, *supra).* CPL 310.30 makes a defendant's right to be present during instructions to the jury absolute and unequivocal *(see,* CPL 310.30; *People v Ciaccio, supra,* pp 436-437). Because this defendant was absent during a material part of his trial, harmless error analysis is not appropriate".

Moreover, based on our review of the record of trial, we also find that the trial court committed reversible error in submitting to the jury, over defense objection, a written copy of the portion of its oral instructions on intoxication and intent. The Court of Appeals, unanimously, in *People v Owens (supra,* at 590-591), decided, in pertinent part:

"[D]anger and prejudice are threatened where, as here, portions of the oral instructions are submitted in writing * * *

"[T]he submission created the potential for prejudice by inviting the jury to place undue emphasis on those matters contained in the written submission, subordinating those portions of the charge—favorable to the defense—contained in the oral charge, and error was committed" *(see also, People v Murray,* 131 AD2d 397 [1st Dept 1987]).

With reference to the coercive charge contention, the record

indicates that on the first day of deliberations, at approximately 5:25 P.M., the jury announced that it was "unable to reach a unanimous decision at this time". Immediately, defense counsel moved for a mistrial, which the trial court denied. Then defense counsel requested the trial court to "simply instruct the jury to resume deliberations, and not make any further supplemental charge, and certainly not tell the jury that they will be sent out at 6:30", but the trial court denied that application. Subsequently, the trial court gave an *Allen* type charge to the jury, which stated, in pertinent part:

"According to my records, the case was given to you at 12:25 P.M. It's now 5:45. The Court does not consider this to be a reasonable time * * *

"For the parties involved here this case is an important one. Its presentation to you has involved expense from both sides. If you fail to agree upon a verdict, this case will have to be tried by another jury, which will be selected in the same manner as you were and from the same sources you were chosen * * *

"So I am going to direct that you continue to deliberate. If you have not reached your verdict at 6:30, we will send you to dinner and possibly to a hotel".

When, at the close of the *Allen* charge, defense counsel moved for a mistrial, the trial court denied the motion.

After receiving this *Allen* charge, the jury returned a verdict of guilty within 90 minutes.

The law is well settled that when a jury announces that it is "deadlocked", the trial court is permitted to give an *Allen* charge *(see, Allen v United States,* 164 US 492, 501-502 [1896]; *and People v Ali,* 65 AD2d 513, 514 [1st Dept 1978], *affd for reasons stated in App Div mem* 47 NY2d 920 [1979]). We unanimously stated in *People v Ali (supra,* at 514), that "[a]n *Allen* charge * * * is proper if it assists the jury in its deliberations by stressing the importance of reaching a verdict without forcing any juror to yield a conscientious belief".

However, it is impermissible for a trial court to word its *Allen* charge in such a manner as to coerce a verdict from a jury *(see, People v Ali, supra; People v Cartagena,* 78 AD2d 601 [1st Dept 1980]; *and People v Riley,* 127 AD2d 458 [1st Dept 1987]).

The courts of this State have held *Allen* charges coercive when such charges emphasize the expense involved in conducting trials in order to facilitate a verdict *(People v Hudson,* 104 AD2d 157, 159 [1st Dept 1984]) and/or, when such charges

threaten sequestration of the jury *(People v Demery,* 60 AD2d 606 [1977]).

Applying the legal authority, discussed *supra,* to the *Allen* charge given by the instant trial court, we find that charge, *inter alia,* coercive and prejudicial, since it improperly stressed the expense involved in conducting the trial, and threatened to send the jury "possibly to a hotel".

We commend efforts made in jury cases, by trial courts, to resolve trials by verdicts; but, we do not approve such efforts of trial courts, if they are coercive and otherwise prejudicial. In *People v Pagan* (45 NY2d 725, 726-727 [1978]), a unanimous Court of Appeals stated, in pertinent part, "[A] Trial Judge 'must not attempt to coerce or compel the jury to agree upon a particular verdict, or any verdict' *(People v Faber,* 199 NY 256, 259). Supplemental charges which prod jurors * * * or coerce them with untoward pressure to reach an agreement will not be countenanced [citations omitted]".

Accordingly, based upon our analysis, *supra,* we find the trial court committed the aforementioned reversible errors, and, therefore, we remand for a new trial. Concur—Ross, J. P., Asch, Rosenberger, Ellerin and Wallach, JJ.