**Jimmie Lee PROCTOR, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 48S00–8802–CR–195.**

Supreme Court of Indiana.

Jan. 23, 1992.

**1090**

William J. Norton, Norton & McCarty, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Defendant–Appellant, Jimmie Lee Proctor, was convicted by a jury of the murder of fellow inmate, Gary Swafford, during a riot at the Indiana Reformatory in Pendleton. He was sentenced to 30 years and this direct appeal followed.

Proctor raises numerous errors for our review. Because the trial court's conduct during deliberations may have unfairly prejudiced Proctor in the presence of an apparently deadlocked jury, we need only address that alleged error.

### I. *Prejudicial Comments to the Jury*

To fully appreciate the gravity of the error in this case, it must first be put into the context of the trial setting. In mid-afternoon of October 14th, the jury began deliberations after hearing six-and-a-half days of testimony. After some deliberation, the jury requested all photographs entered into evidence and the time that those photographs were taken. The judge informed the jury that they would not receive this evidence. After further delibera-

tion, the jury sent a second note to the judge asking for "whatever is available to us ... and a copy of judge's order to the jury." The judge responded by calling the jury in, rereading the final instructions, and sending them back for further deliberation.

After a number of hours had passed, the trial judge again called the jury into court and inquired into the possibility of reaching a verdict. The foreman stated that some of the jurors wanted to see certain items that had been entered into evidence. The judge suggested that the jury send him a specific request regarding these items. By this point, the trial judge began noting the time for the record. It was then 1:30 a.m. on October 15.

Shortly thereafter, the judge received a note from the jury requesting all photo evidence and the testimony of all correction officers. The judge, the prosecutor and Proctor's attorney discussed the possibility of sending this or any other evidence to the jury. The discussion considered whether the jurors were in fact divided over the testimony of all corrections officers or simply some of those correction officers. Regardless, concern was expressed that replaying any or all of this testimony would result in a virtual rerun of the State's entire case in chief and that replay of all or any of the testimony would place undue emphasis on one portion of the trial. The judge determined that he would call the jury back to see if they had made any progress.

The jurors were recalled at 2:30 a.m. At that time the foreman reported that the jury was divided ten to two. The foreman also informed the judge that the jury wished to rehear the testimony of eight witnesses. Again, the judge inquired if there had been any progress since the jury's last appearance in the courtroom. The foreman replied "I would say no." The jury was sent back into the jury room "for just a little bit."

Again, along with counsel, the trial court considered what procedure should be followed at this point. During this discussion,

another note was received by the judge which read simply "All Correctional Officers." At 2:43 a.m. the jury was again recalled so that the foreman could be questioned regarding the names of those persons whose testimony they were specifically requesting. Again, the jury was excused. At this point the following exchange occurred between the judge and counsel.

> JUDGE: The time is now 02:45, we're outside the presence of the jury.... Gentlemen I'm fairly well convinced that to grant this request of the jury to play the testimony of all the correctional officers would place undue emphasis on one aspect of the case and I would be inviting serious censure from the court of appellate review, should that be necessary. I'm inclined to grant a motion for mistrial if anybody is so inclined.
>
> DEFENSE ATTORNEY NORTON: I so move, Your Honor.
>
> JUDGE: Okay, I'm going to grant Mr. Norton's motion for mistrial.

> \* \* \* \* \* \*

> PROSECUTOR: May I make a request?
>
> JUDGE: Certainly, sir.
>
> PROSECUTOR: That the court, before you make that ruling granting the motion, that you ask the jury one more time when they come in ... inform the jury first of all that they're not going to get that testimony....

> \* \* \* \* \* \*

> They haven't been told that, ask them in light of that fact, if they feel that, they feel that they can or can not arrive at a verdict.
>
> JUDGE: Fine, that seems like a reasonable request to me. I'll follow that procedure. I know they're getting tired of getting jacked around here but I don't know what else to do.

The jury was recalled into the courtroom.

> JUDGE: Please be seated folks.... The time is 02:50. All of our jurors are present. Mr. Foresee, as foreman of the jury I need to ask you this question. If I do not grant your request to hear the testimony of all correctional officers and that of Detective Sergeant Bolander, is it possible, in your opinion, for the jury to reach a verdict? Is it reasonably possible.
>
> FOREMAN: No, its not that reasonable at all, no.
>
> JUDGE: Well, the way it looks to me, folks, is that we have given it our best shot and I think its time to go home and Mr. Norton has moved for a mistrial based on the inability of the jury to reach a verdict. I know its [sic] like kissing your sister.
>
> FOREMAN: Well, we have covered this amongest [sic] ourselves.
>
> JUDGE: You did?
>
> FOREMAN: And, you know, as to whether or not we would actually get the material and we had decided that we would take another vote.
>
> JUDGE: Alright, do you want to try one more time?
>
> FOREMAN: Yes, sir.
>
> JUDGE: Without the material. Alright.

The jury was then once again sent back to the jury room for further deliberations. Proctor again moved for a mistrial, stating the additional ground that, by informing the jury that Proctor's attorney was the one who requested a mistrial, the court prejudiced the jury against him because such motion could be interpreted as insulting to the jury by implying that Proctor did not trust them. Specifically, Proctor's attorney stated that he thought it was "very, very prejudicial," to which the trial court replied, "Well you're probably right. Let's see what happens." The jury deliberated an additonal forty minutes and returned a guilty verdict at 3:36 a.m.

 The trial judge must conduct proceedings in a manner that "facilitates ascertainment of truth, insures fairness, and obtains economy of time and effort commensurate with the rights of both society and criminal defendant." *Armstrong v. State* (1986), Ind., 499 N.E.2d 189, 191. By allowing the jury to return to deliberations at 2:50 a.m. and render a verdict after being informed that Proctor's counsel had moved for a mistrial and that the court was

prepared to grant it, the judge allowed considerations of economy to outweigh the *facilitation of the ascertainment of truth.*

Although it is impossible to precisely gauge the toll that the judge's comment had on the jury, it undoubtedly had an effect. We can appreciate the impact that the judge's comments had on a jury that had worked almost around the clock—from early morning on the 14th until 3:00 a.m. on the 15th. Neither this jury, nor any jury, could be expected to totally disregard the fact that the defendant had requested a mistrial. The clear import of this request to the jury was that Proctor was not confident in his position. The jury easily could have interpreted his request for a mistrial as either an indication of guilt or a mistrust of the jury's abilities. Most significantly, a lay jury is very likely to be unaware that a grant of a mistrial results in retrial as opposed to accquital. This jury was not advised otherwise. In any event it is clear that the judge's action had a prejudicial effect. The jury had continuously indicated that it was deadlocked by a 10–2 margin and yet rendered its unanimous verdict within 40 minutes of being told of the request for mistrial. The judge's comments tainted the regularity of the proceedings and require us to hold that a new trial is necessary.

### II. *Sufficiency of the Evidence*

■ Proctor alleges that his conviction was not supported by sufficient evidence. Because the double jeopardy clause forbids retrial where a reviewing court finds that the State clearly failed to meet its burden of proof, we must address this issue. *Burks v. U.S.* (1978), 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1.

An examination of the trial record reveals that substantial evidence was presented to the jury by both sides of this case. On one hand, the State presented evidence that Proctor was one of the attackers; on the other hand, Proctor presented evidence that he was not involved in the attack on Swafford. Sufficient evidence exists, however, for the jury to have made its finding. The State's witnesses gave testimony that varied only slightly, even under intense cross-examination. The State also presented evidence that would tend to refute Proctor's charges that the testimony of the State's witnesses was not credible. Consequently, we cannot say that the evidence upon which the conviction was based is lacking.

Accordingly, the conviction is reversed and the matter is remanded to the trial court for a new trial.

DeBRULER and DICKSON, JJ., concur.

SHEPARD, C.J., dissents with separate opinion, in which GIVAN, J., joins.

SHEPARD, Chief Justice, dissenting.

The question which confronts the Court in deciding whether to vacate the jury verdict in this case is how reliable Hoosier jurors are after the trial judge lets it slip who moved for a mistrial. It is an assessment about which reasonable people can disagree. Here, I think the jurors likely did their duty, and I would affirm their verdict.