Robert H. WILLIAMS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 82A04–9208–CR–286.

Court of Appeals of Indiana,
Fourth District.

March 24, 1993.

Transfer Denied May 12, 1993.

Barry L. Standley, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Robert Henry Williams, age 59, was convicted by a jury of murdering his girlfriend, Margaret A. Harris, age 33.

Williams was sentenced to fifty years incarceration. Williams claims that the trial court erred by: (1) denying his motion to suppress; and (2) denying his motion for a mistrial after the trial court informed the jury he had filed a motion to suppress.

We affirm.

### FACTS

On July 31, 1991, a heavy equipment operator discovered a body, wrapped in yellow curtains, on the ground in a construction company yard. The body was identified as Margaret Harris. She had been beaten to death with a blunt instrument and had been stabbed a number of times in the back and neck. The autopsy report found that the stab wounds occurred either immediately before or just after death.

At the scene, investigating officers noticed a set of tire tracks. The tracks had different tread patterns on the right and left front tires. As the investigation continued during the day, Evansville Police discovered that Williams had been dating Harris. Two officers, Patton and Robinson, went to Williams' apartment to question him. Patton knew Williams personally. They asked him to go to police headquarters for further questioning. Williams agreed and the officers drove him to headquarters, arriving a little after 1:00 p.m. Williams was not in custody, so the officers did not give him Miranda warnings. Williams was cooperative and spoke freely with the officers.

The officers and Williams were in a private room. Williams told the officers he had last seen Harris the Sunday before her body was found; they had argued; and that Harris had left her crutch [1] and watch in his apartment. At this point, Patton asked Williams if he would consent to a search of his apartment so that the officers could recover the watch and crutch and also if they could search his car. Williams consented. The officers did not have a written consent form in the room, so they left Williams in the room, went to the de-

tective offices to get one, and to inform their superiors what was going on.

A deputy prosecutor, Neil Thomas, was in the office at that time along with officers who were working on the case. These officers told Robinson and Patton about the distinctive tire tracks found at the scene and that Williams' car, parked in plain view, had tires that appeared to match. The officers also told Robinson and Patton that Williams was to be considered a viable suspect. Robinson and Patton told the officers and Neil Thomas about Williams' consenting to a search of his apartment and car and what they were doing. The deputy prosecutor, Thomas, advised Robinson and Patton to give Williams his Miranda warnings.

Robinson and Patton returned to the room and advised Williams of his rights. Williams stated he would like an attorney, but because he had no money, would need to have one appointed. However, Williams volunteered that the officers still could search his apartment and his car, then signed the consent forms. Williams was not in custody at this point. The officers did not continue the interrogation once Williams had stated he wanted an attorney. After some time passed, Williams asked Patton if the searching officers had found the watch and crutch. Patton said "apparently not." Williams told Patton the crutch was in a closet and the watch was in a small jewelry box.

During the search of his apartment, the officers recovered the watch and crutch. They also recovered floor mats and other items from his car. Even after the searches were completed, Williams was not arrested. However, he hung around police headquarters until about 8:00 p.m., talking with Patton who he had known for years. When Williams decided to leave, he was offered a ride home. Williams declined, stating he would rather walk.

On August 9th, the police obtained a warrant to search the body of Williams and seize hair, blood and saliva samples and a search warrant for Williams' apartment.

---

**1.** Harris had suffered a broken ankle in an altercation with Williams about three weeks before her death. She had a walking cast and was using a single crutch to get around.

On August 19th, they obtained a warrant to search his car. On August 21st, an information was filed charging Williams with the murder of Margaret Harris and a warrant was issued for his arrest.

## DECISION

### I. FOURTH AMENDMENT CLAIM

█ Williams argues the fruits of the initial search of his apartment and car should be suppressed because his consent was invalid. He also argues that the evidence seized under the search warrants should be suppressed because the warrants were issued based upon "fruits of the poisoned tree." The Supreme Court, in *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 2048, 36 L.Ed.2d 854, held that the voluntariness of consent is to be determined by a consideration of the totality of the circumstances and that a person who is not in custody does not have to be advised of his Fourth Amendment rights before being asked to consent to a search. Indiana courts have followed this reasoning. *See Smith v. State* (1982), Ind., 432 N.E.2d 1363; *Wills v. State* (1974), 162 Ind.App. 159, 318 N.E.2d 385. Consent may be given by an express oral statement. *Stabenow v. State* (1986), Ind.App., 495 N.E.2d 197, 199. A consent to a search is valid except when procured by fraud, duress, fear, or intimidation or when it is merely a submission to the supremacy of the law. *Martin v. State* (1986), 490 N.E.2d 309, 313.[2] Determinations of the validity of a consent are factual issues. *Illinois v. Rodriguez* (1990), 497 U.S. 177, 185, 110 S.Ct. 2793, 2800, 111 L.Ed.2d 148. A reviewing court will only overrule the factual determinations of the trial court if such findings are clearly erroneous. *United States v. McMurtrey* (1976), 8th Cir., 534 F.2d 1321, *cert. denied sub nom.* 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286; Fed.R.Civ.P. 52(a); Ind.Trial Rule 52(A).

█ Williams claims because he was in custody, the rule of *Pirtle v. State* (1975), 263 Ind. 16, 323 N.E.2d 634, controls his case. Custody in the Fourth Amendment sense means a seizure. A seizure in the constitutional sense does not occur simply because a police officer approaches a person and asks questions. *Florida v. Bostick* (1991), —— U.S. ——, ——, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389. So long as a reasonable person would feel free "to disregard the police and go about his business," the encounter is consensual. *California v. Hodari D.* (1991), —— U.S. ——, ——, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690. Such an encounter will not trigger Fourth Amendment scrutiny. *Bostick, supra.* A person may refuse to cooperate but without more, this refusal does not "furnish the the minimal level of objective justification needed for a detention or seizure." *Id.*, —— U.S. at ——, 111 S.Ct. at 2387. In *Pirtle*, our supreme court stated that if a person is in custody, he must be informed of his Miranda rights. The court then held "that a person who is asked to give consent to search *while in police custody* is entitled to the presence and advice of counsel prior to making the decision whether to give such consent." *Id.*, 323 N.E.2d at 640 (emphasis added).

█ Williams' reliance on *Pirtle* is misplaced because the undisputed facts show that he was not in police custody, i.e., he had not been "seized" in the constitutional sense. Williams argues that because he had been read his rights, he then had asked for counsel, and counsel was not present before he signed the consent forms, his consents were invalid. Williams voluntarily accompanied Robinson and Patton to police headquarters. When a person freely and voluntarily accompanies police officers, there is no arrest. *Woods v. State* (1989), Ind., 547 N.E.2d 772, *on reh'g*, 557 N.E.2d 1325, *cert. denied* —— U.S. ——, 111 S.Ct. 2911, 115 L.Ed.2d 1074 (1991). Robinson and Patton both testified that Williams was

---

**2.** In *Martin*, the suspect was not yet under arrest, but he was handcuffed and under the direct control of five police officers when the police asked for his consent to search a car. The police had to remove the handcuffs so that Martin could sign the consent form. Despite these circumstances, our supreme court found Martin's consent was voluntary when considered in the light of all the surrounding circumstances. *Martin, supra,* at 313.

free to leave police headquarters at any-time. The only *evidence*[3] in this case shows Williams was free to leave at any-time and that he even hung around after the officers finished questioning him, just to talk with his old acquaintance, Officer Patton. Williams volunteered the information that Harris' watch and crutch was in his apartment. He orally consented to a search of his apartment and his car. After again authorizing the search—this time in writing—he then volunteered information to aid the officers in finding the objects of the search, Harris' crutch and watch.

■ Williams was given his Miranda rights before signing the consent form. Knowledge of the right to refuse a search is one factor that indicates voluntariness. *Schneckloth, supra.* However, though the officers read Williams his rights at the advice of a deputy prosecutor, they were under no obligation to do so. It is undisputed that Williams was neither under arrest nor in custody at this time—he was free to leave at anytime and thus, had not been seized. In fact, he was not arrested until August 21st, three weeks after he consented to the search of his apartment and car. *Pirtle* is not controlling here. Williams' rights under the Fourth and Fifth Amendment did not attach until he was seized, in this case, arrested. Williams' rights had not yet attached when he gave his oral consent and later signed the consent forms, thus, the resulting searches of his apartment and car could not and did not violate his rights.

Since these first searches of his apartment and car were valid, there can be no "fruit of the poison tree" to taint the subsequent warrant searches of Williams' person, apartment, and car. The trial court's determination that Williams' consent was valid is not clearly erroneous. The trial court did not err by denying Williams' motion to suppress.

## II. MOTION FOR MISTRIAL

■ During the trial, Williams' counsel asked the trial court to make a record showing his continuing objection to the evi-dence that resulted from the four searches. The trial court stated in open court that "the objections previously made by the defendant in a Motion to Suppress are now incorporated into the record and show the defendant's continuing objection to these exhibits...." R. 157–158. Williams' counsel then moved for a mistrial, relying on *Proctor v. State* (1992), Ind., 584 N.E.2d 1089. R. 162, 168. Williams' reliance on *Proctor* is misplaced.

In *Proctor*, the defendant was charged with the murder of a fellow inmate during a prison riot. *Id.* The trial court informed the jury that the defendant had moved for a mistrial after the jury appeared to be deadlocked ten-two. *Id.* at 1092. The jury was sent back for further deliberations and returned in forty minutes with a guilty verdict. *Id.* at 1091. Our supreme court held that so informing the jury indicated that the defendant was not confident in his position, and that the jury could have concluded that the request was either an indication of guilt or a mistrust of the jury's abilities. Most importantly, a jury would be unlikely to know that a mistrial results in a new trial, not an acquittal. Thus it was clear to our supreme court that the trial court's action had a prejudicial effect and the court remanded the case for a new trial. *Id.* at 1092.

These considerations do not apply with respect to a motion to suppress. The jury sees counsel on both sides attempting to keep out evidence throughout a trial. Telling the jury that defendant had made a motion to suppress some of the evidence would come as no surprise to any reasonable juror. Objections to evidence are made throughout trials—some are sustained and some are overruled. We cannot see how such information can be said to prejudice the jury.

We find no merit in Williams' argument that a motion to suppress is analogous to a trial court informing a deadlocked jury that the defendant has filed a motion for a

---

**3.** Argument by counsel to the contrary is not    evidence.

mistrial. The trial court did not err in denying William's motion.

Affirmed.

CONOVER and GARRARD, JJ., concur.