Michael KELLEY, Petitioner,

v.

Robert FARLEY, Indiana Attorney
General, Respondents.

No. 3:94cv723AS.

United States District Court,
N.D. Indiana,
South Bend Division.

Nov. 2, 1995.

Michael Kelley, pro se.

Randall Koester, Office of Indiana Attorney General, Indianapolis, IN, for respondents.

## I. INTRODUCTION

ALLEN SHARP, Chief Judge.

On September 12, 1994, *pro se* petitioner, Michael Kelley (hereinafter "Petitioner" or "Kelley"), then an inmate at the Indiana State Prison located in Michigan City, Indiana, filed a petition in this court seeking relief under 28 U.S.C. § 2254 raising the same issues that he raised in his post-conviction proceedings. The response filed by the respondents on December 27, 1994, demonstrates the necessary compliance with *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982). Kelley's Traverse filed on March 7, 1995 is

quite lawyerlike in form. The state court record has been filed and examined pursuant to the mandates of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

Kelley was convicted of murder in the perpetration of a robbery in 1982 by a jury in Lake County Superior Court, the Honorable James L. Clement presiding.[1] For his efforts, Kelley received a forty year prison sentence. On direct appeal Kelley's conviction was affirmed by the Supreme Court of Indiana in *Kelley v. State,* 470 N.E.2d 1322 (1984) with Justice Donald H. Hunter writing the opinion with Justices DeBruler and Prentice concurring in result without opinion. Thereafter, post-conviction relief was sought in the state trial court. The court denied relief and was affirmed on appeal by the Third District of the Court of Appeals in an opinion entered on May 26, 1994, authored by Judge Garrard and concurred in by Judges Sharpnack and Staton. That affirmation is marked as Appendix "A" and is attached hereto and incorporated herein. The dispositive issue in this case concerns communication between the judge and jury during deliberation.

## II. ISSUES

Whether Judge Clement's comments to the jury concerning possible sequestration in a motel coerced the jury into a verdict thereby violating Kelley's right to a fair trial under the Due Process clause of Amendment XIV of the United States Constitution. Whether Kelley's trial counsel was ineffective for failing to object to the Judge's comments.

---

1. Kelley was not initially a suspect in the murder. Only after Kelley inadvertently "spilled the beans" on himself did the police consider him a suspect in the murder of J.W. Hawkins.

   The body of the victim was found in an alley under circumstances indicating he was dropped there after his death. He had died from a wound from a bullet which had entered the back of his head and had exited near his mouth, shattering four teeth.

   Several months later, [Kelley], a narcotics informant for the Hammond police department, met with Hammond police officers to discuss an unrelated case. After that discussion, he volunteered the information that he had been driving his car when the victim, seated in the front passenger seat, was shot with the defendant's gun by the defendant's companion who was seated in the back. He told the police that he did not know the victim would be shot, but that he and his companion had planned to rob the victim of his cocaine and did so after the shooting. He told the police that the victim's body was left in the alley where it was found. At trial the defendant denied making the confession.

   In the defendant's car the police found tooth fragments and a stain of human blood on the front passenger seat. They discovered a bullet-sized hole in the "headliner" above the front passenger seat.

### III. FACTS

This court is entitled to presume that the facts as found by the Indiana Court of Appeals are correct. 28 U.S.C. 2254(d); *Johnson v. Trigg*, 28 F.3d 639 (7th Cir.1994); *Lewis v. Huch*, 964 F.2d 670, 671 (7th Cir. 1992); *Andersen v. Thieret*, 903 F.2d 526, 531 (7th Cir.1990). In the May 26, 1994 memorandum and decision affirming the decision of the post-conviction court, the Indiana Court of Appeals considered the claim at issue in this Petition and in doing so stated the relevant facts as:

> On December 13, 1982 at approximately 12:00 p.m., the jury in Kelley's case retired to deliberate. At nearly 10:00 p.m., Judge Clement met with counsel concerning the possibility of arranging hotel accommodations for the jury. The judge then called the jury into the courtroom and inquired as to the status of the deliberations. The foreman stated that they were still talking but had not reached a verdict. There was no indication from the jury that it was deadlocked or having any unusual problems. Judge Clement raised the possibility of going to a hotel within an hour if no verdict was reached, and either the foreman or another juror replied that the jury did not want to go to a hotel. The judge sent the jury back to deliberate, and the jury returned a guilty verdict approximately one hour later. Kelley's attorney did not object at any state of these proceedings, nor did he raise the issue in Kelley's motion to correct errors. Kelley did raise this issue in a *pro se* motion to correct errors, and the motion was denied. Kelley's appellate counsel, William Enslen, did not raise the issue on direct appeal to the Supreme Court.

Although this court is entitled to presume that the facts as found by the state court are correct, there was no recording of the conversation between the judge and the jury. Therefore, the factual findings of the post-conviction court and the Indiana Court of Appeals are based upon the post-conviction testimonial memories of Kelley and his trial counsel, Herbert I. Shaps. Accordingly, this court believes that it would be helpful to reproduce Kelley's testimony regarding his recollection of Judge Clement's comments to the jury. Kelley testified at his post-conviction hearing that:

> The judge asked the jury foreman if they had reached a verdict and the foreman said, "No, we haven't," and he said, "Well, is there any problem," and the foreman said—"Well," before he could even answer the question, he said, "Well, I called you out here to sent you to a motel". He said, "Do you want to go to a motel," and they all shook their head no, and at that time I think it was they had a sidebar conversation. Mr. Shaps, Mr. Burke and the Judge had a little conversation and then he turned back to them and asked them about going to the motel, and whether they wanted to go or not, and they indicated they didn't want to go and he asked them again if they were having any problems or something to that effect, and they stated that they weren't having any problems, but they didn't want to go to a motel, and he said, "Well, I don't know what else to do. You haven't indicated any problems. I'm going to give you one more hour to come back with a verdict. If you don't come back with a verdict within an hour," he said, "you'll be sequestered in a motel overnight and you'll resume deliberations in the morning."

*Record of Post–Conviction Proceedings*, Vol. 1 of 1. p. 231 *et seq.* It would not be helpful for this court to conduct an evidentiary hearing. The recollections of Judge Clement's comments to the jury were adequately recorded at the post-conviction relief hearing on June 10, 1992. There is no reason to believe, and the record does not show, that the memories of the participants in the trial would be any better at a hearing before this court as to an event that took place more than 13 years ago.

### IV. DISCUSSION

The relationship between a deliberating jury and a trial judge is a most sensitive one which the judge must approach with a great sense of restraint. In this Circuit it is abundantly clear that due process considerations are given close attention in the dealings between the deliberating jury and a trial judge

in both state and federal criminal cases. *See, e.g., United States v. Rodriguez,* 67 F.3d 1312 (7th Cir.1995); *United States v. Smith,* 31 F.3d 469 (7th Cir.1994). *United States v. Peak,* 856 F.2d 825 (7th Cir.1988).

■ However, this court does not sit as a court of common law review for state criminal appeals. The focus here under 2254 is not on state law violations, *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), *Bell v. Duckworth,* 861 F.2d 169, 170 (7th Cir.1988) but on the requirement of a defendant's right to a fair trial under the Due Process Clause of Amendment XIV of the Constitution of the United States. Fundamental due process requires that a guilty jury verdict result from a collection of individuals satisfied within their own conscious that the accused is guilty beyond a reasonable doubt. In arriving at this collective consciousness, the jurors may consider their own views as well as the views of their fellow jurors. Unanimity is secured by jurors comparing and arguing each other's viewpoints. The process is intended to be without the pressure of time constraints— jurors should remain free to deliberate as long as they are making progress towards a verdict.

However, it is not uncommon for deliberations to bog down and for the court to order a cessation of deliberation for the night. *See United States v. Arciniega,* 574 F.2d 931 (7th Cir.1978). It may be that the physical and/or mental health of the jurors prevents further deliberation. Fatigued by hours of discussing, arguing, pleading, and cajoling with those in disagreement, jurors need an opportunity to rest, relax, and ponder the day's events. The jurors may also become deadlocked or have a question about the law.

■ The fact that a judge chooses to stop deliberations is not *per se* unconstitutional. It is entirely reasonable for the court to decide at what point the jury should cease deliberating for the night when reason and common sense demand it. However, in making that decision, the judge must avoid using language and procedures which could coerce a jury into a verdict. "It is not proper to

give an instruction censoring jurors for not agreeing with the majority." *McGilberry v. State,* 516 So.2d 907 (Ala.Crim.App.1987). It is also improper to give supplemental instructions urging a jury to forego their differences and come to a unanimous decision in the interests of expediency. *Rodriguez,* 67 F.3d at 1320; *See also, Edwards v. Butler,* 882 F.2d 160, 166 (5th Cir.1989); *United States v. Bottom,* 638 F.2d 781, 786 n. 4 (5th Cir.1981). Kelley alleges that Judge Clement coerced the jury into a verdict by informing the jury that they would be allowed to deliberate for only one more hour before being "locked-up" for the night.

In support of his argument, Kelley cites *United States v. Chaney,* 559 F.2d 1094 (7th Cir.1977) and *United States v. Silvern,* 484 F.2d 879 (7th Cir.1973), both of which have roots within *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). However, the applicability of *Chaney* and *Silvern* and their progeny in this § 2254 proceeding is questionable. In *Allen* the Court *approved* an instruction that urged deadlocked jurors to, among other things:

> listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.

*Id.* at 501, 17 S.Ct. at 157.

First in *Silvern* and later in *Chaney,* the Court to restricted Allen's permissive holding very narrowly. In *Silvern,* the Court criticized instructions given by a federal district judge used to encourage a deadlocked jury to reach a verdict. The *Silvern* court found the issue of a deadlocked jury so sensitive that it mandated under it's supervisory powers particular language and procedures to be used in situations where a jury appears deadlocked.[2]

2. Then Judge, now Justice Stevens observed it

curious that "this circuit can lawfully announce

But unlike *Silvern,* there is no indication that Kelley's jurors were deadlocked.

*United States v. Chaney,* 559 F.2d 1094 (7th Cir.1977) also has overtones of a deadlocked jury. In *Chaney* "counsel for both parties were called into chambers where the judge asked defense counsel if he thought the possibly hung jury should be continue on with its deliberations or be bedded down for the night." *Id.* at 1097. Returning to the bench, the judge gave the following instruction:

> If you do not arrive at a verdict then the jury will be brought into the court tomorrow morning at 9:30 and the Court will then determine what course should be taken. I might say the hours I am required to spend, and the other attaches of the Court we are going to let the jury continue on with these instructions. So, with that the jury may continue on. I have told the Marshal that arrangements can be made to take you to a place for coffee or midnight dinner whatever the jury might desire in that regard. We will stand adjourned.

*Id.* After deliberating all night the jury reached a verdict at 6:30 a.m. and returned to the court at 9:45 a.m. to announce it. Again relying upon its' supervisory powers, the Court reversed Chaney's conviction and ordered a new trial. Reversal was warranted not because the jurors were threatened with sequestration, but "[b]ecause the ... charge ... [did] not harmonize with the exemplar [in *Silvern* ]." *Chaney,* 559 F.2d at 1098.

In addition to the factual differences between Kelley's case and *Silvern* and *Chaney,* it is not clear that the Court intended *Silvern* and *Chaney* to govern habeas corpus review of state criminal proceedings under 28 U.S.C. § 2254. *Silvern* and *Chaney* were direct appeals from convictions in the federal district court and were reversed not upon a Constitutional violation of Due Process under 28 U.S.C. § 2254, but instead upon the supervisory powers of the Court. The review of state court criminal trials envisioned under 28 U.S.C. § 2254 looks only to Constitutional violations. Although a purist view of *Chaney* might compel the granting of a writ under 28 U.S.C. § 2254, it is questionable whether *Chaney* is to be given full blown application here in this collateral review of a 13 year old state law criminal case. Is *Chaney* bottomed on due process values under Amendment XIV or is *Chaney* based on the authority of a Federal Appeals Court to supervise the judge-jury relationship in a United States District Court?

A review of the case law shows that both *Silvern* and *Chaney* are closer to the latter than the former. The remarks of the Court in *Ortiz v. Duckworth,* 692 F.2d 39, 41 (7th Cir.1980) illustrate this point.

> Petitioner relies on : ... *United States v. Brown,* 411 F.2d 930 (7th Cir.1969) *United States v. Silvern,* 484 F.2d 879 (7th Cir. 1973), *United States v. Chaney,* 559 F.2d 1094 (7th Cir.1977). All these decisions were appellate reviews of federal convictions.
>
> In Brown and Silvern this court affirmed convictions, although in Brown we gave a general direction as to future charges to deadlocked juries, 411 F.2d at 934, and in *Silvern* we prescribed an instruction and procedure, doing so "under our supervisory power." 484 F.2d at 882–883. In Chaney, we applied Silvern and reversed a conviction, stating that even if the error were not properly preserved, we would consider it under the plain error rule. Except for a brief interpretative remark in *Chaney,* 559 F.2d at 1098, to the effect that types of supplemental charges had been "condemned [in Brown and Silvern] as impeding a defendant's right to trial by an impartial jury and to due process," *none of these decisions expressly discussed supplemental charges in terms of a denial of due process....* (emphasis added)

*Id.* This is not to say that a judge could never issue instructions so coercive as to violate due process. It simply means that the strict scrutiny of *Chaney* and *Silvern* are not specifically mandated by the Constitution.

that an instruction to a jury which the Supreme Court has specifically and squarely held is not reversible error in federal criminal trials shall in the future constitute reversible error when given in such trials conducted in the Seventh Circuit." *Silvern,* 484 F.2d at 886.

■ "Ordinarily, the length of time a jury may be kept together for deliberation is a matter for the sound discretion of the trial judge. The time a jury may be compelled to deliberate is necessarily limited by the prohibition against forcing the jury to agree upon a verdict." *United States ex rel. Latimore v. Sielaff,* 561 F.2d 691, 696 (7th Cir.1977) *cert. denied,* 434 U.S. 1076, 98 · S.Ct. 1266, 55 L.Ed.2d 782. In attempting to secure a verdict, a judge must not place such pressure on the jurors that at least one of them might have surrendered views that he or she conscientiously entertained. *Id.* This court looks to the totality of the circumstances to determine if Judge Clement's comments could have coerced a juror into surrender a view that he or she "conscientiously entertained". *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); *Jenkins v. United States,* 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965).

■ In looking at the entire record, it is important to note what was *not* said. For whatever reason, (likely fatigue since the hour was so late) Judge Clement debated whether to continue the deliberations until the next morning. The jury was brought in and the state court record indicates that when discussions about sequestration arose, the foreman of the jury stated that the jury did not wish to be sequestered. Even accepting Kelley's more detailed post-conviction testimony as a true reflection of Judge Clement's comments, the remarks of the Indiana Court of Appeals pointing out what was *not* said is persuasive:

The judge did not tell the jury that it had to reach a verdict, suggest that any jurors should reconsider their positions, or make

any reference to the resources expended in the trial. Instead, he simply informed the jurors that, as the hour was growing late, they would be provided accommodations for the night so that they could continue deliberations for the next day, if necessary. *Kelley v. State,* 635 N.E.2d 1162 (Ind.Ct.App. 3rd Dist.1994). "Inquiries into the numerical division of a jury, statements to a deliberating jury that they must reach a verdict, allusions to the undesirability of a retrial, and setting a time limit upon further deliberations have been held to be coercive." *United States v. Sielaff,* 552 F.2d 588, 590 (7th Cir.1977) (footnotes omitted) No such comments were made here.[3]

Moreover, the fact that Kelley's counsel, Mr. Shaps, who by that time had been counsel in about seventy (70) felony trials had no contemporaneous objection or alternative suggestions to Judge Clement's comments is indicative that there is nothing else that Judge Clement could have done. Although in retrospect, Mr. Shaps states that he should have objected, he does not, nor does Kelley propose what the judge should have said.

■ Judge Clement, a veteran trial judge in massive experience in the hard realities of criminal trials, was basically faced with a no winner; anything he might do could be fatal to a verdict by nitpicking later review. The jury had already deliberated 10 hours and Judge Clement might well have been condemned for avoiding concern over the comfort and well being of the jury. He made an altogether proper inquiry. Neither was *Allen* invoked or *Silvern* violated. He was apparently confronted by a jury which de-

---

3. Interestingly, the case that the *Sielaff* court cited for the proposition that it is impermissible to set a time limit for further deliberations did not find error in the decision of the trial court to give the jurors an additional half-hour to deliberate before being recessed for the night. *See, United States v. Taylor,* 530 F.2d 49, 50–52 (5th Cir.1976). The error was that the trial court gave an impression during the next morning deliberations that the jurors might have to deliberate for over 13 hours that day. The judge was also late in excusing the jurors for lunch and failed to recess the jury in time for some of its members to begin service on another jury panel. It was this *combination* of time restraints along

with an improper *Allen* charge and emphasis on the time and effort that had gone into the trial that warranted reversal.

*See also, People v. Steidl,* 142 Ill.2d 204, 154 Ill.Dec. 616, 568 N.E.2d 837 (1991) *cert. denied,* 502 U.S. 853, 112 S.Ct. 161, 116 L.Ed.2d 125 (holding that jury returning verdict 45 minutes after informed would be sequestered in hotel was not coerced into verdict); *Ziegler v. State,* 65 Wis.2d 703, 223 N.W.2d 442 (1974) *People v. Derrico,* 409 Ill. 453, 100 N.E.2d 607 (1951) (trial judge did not curtail deliberations of jury by informing them that it would be accommodate in hotel overnight rather than prolong further deliberations).

sired to stay with its assigned tasks notwithstanding the lateness of the hour and the length of deliberations. He acted with reasonableness and avoided the hard edges of *Chaney* even assuming its full blown application here. Judge Clement's comments did not violate the basic values of due process under the 14th Amendment and this court is most reluctant to hold otherwise thirteen years later. Unlike the Court of Appeals in *Chaney*, this court does not have any supervisory authority over any state criminal courts, let alone the state criminal courts in Lake County. The habeas corpus authority of this court under § 2254 only governs violations of the United States Constitution. There were no such violations in Kelley's trial.

## V. CONCLUSION

■ A review of the totality of the circumstances at Kelley's trial leaves this court with the firm belief that Judge Clement's comments did not coerce the jury into a verdict. Moreover, since there was no error in the comments, Kelley's counsel was not ineffective for failing to object to them under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Kelley's petition is DENIED. The clerk shall enter judgment accordingly. **IT IS SO ORDERED.**

### APPENDIX A

### [NOT FOR PUBLICATION]
**IN THE
COURT OF APPEALS OF INDIANA
THIRD DISTRICT**

**MICHAEL A. KELLEY,**
Appellant–Petitioner

vs.

**STATE OF INDIANA,** Appellee–
Respondent

No. 45A03–9310–PC–351

[Filed May 26, 1994]

*ATTORNEY FOR APPELLANT:*

Susan K. Carpenter
Public Defender of Indiana

Cynthia Maricle Russell
Deputy Public Defender

Office of Public Defender
Indianapolis, IN 46204

*ATTORNEYS FOR APPELLEE:*

Pamela Carter
Attorney General of Indiana

Julie Zandstra Frazee
Deputy Attorney General

Office of Attorney General
Indianapolis, IN 46204–2794

**APPEAL FROM THE LAKE SUPERIOR
COURT, CRIMINAL DIVISION**
The Honorable Richard W. Maroc, Judge
Cause No. 4CR–196–982–780

*MEMORANDUM DECISION*

GARRARD, Judge.

In 1982 Michael Kelley was convicted by a jury of murder in the perpetration of a robbery and sentenced to forty years in prison.[1] He now appeals the denial of his petition for post-conviction relief, arguing that the verdict was tainted by a prejudicial charge to the jury.

FACTS

Kelley's allegation of error is based upon the judge's comments to the jury during the course of deliberations. As no record of these proceedings exists, we must rely on the testimony of Kelley and his trial attorney, Herbert Shaps, at the hearing on Kelley's petition for post-conviction relief.

On December 13, 1982, at approximately 12:00 p.m., the jury in Kelley's case retired to deliberate. At nearly 10:00 p.m., Judge Clement met with counsel concerning the possibility of arranging hotel accommodations for the jury. The judge then called the jury into the court room and inquired as to the status of the deliberations. The foreman

1. Kelley's conviction was affirmed by the supreme court in *Kelley v. State* (1984), Ind., 470 N.E.2d 1322.

stated that they were still talking but had not reached a verdict. There was no indication from the jury that it was deadlocked or having any unusual problems. Judge Clement raised the possibility of going to a hotel within an hour if no verdict was reached, and either the foreman or another juror replied that the jury did not want to go to a hotel. The judge sent the jury back to deliberate, and the jury returned a guilty verdict approximately one hour later. Kelley's attorney did not object at any stage of these proceedings, nor did he raise the issue in Kelley's motion to correct errors. Kelley did raise this issue in a *pro se* motion to correct errors, and the motion was denied. Kelley's appellate counsel, William Enslen, did not raise the issue on direct appeal to the supreme court.

## ISSUES AND DISCUSSION

Kelley raises the following issues in appealing the denial of his petition for post-conviction relief:

I. Whether it was fundamental error for the court to advise the jury of the possibility of being sequestered in a hotel.

II. Whether Kelley's trial counsel was ineffective for failing to object to the court's supplemental charge and failing to raise the issue in the motion to correct errors.

III. Whether Kelley's appellate counsel was ineffective for failing to raise the issue of ineffective assistance of trial counsel and the court's supplemental charge on appeal.

Kelley alleges that the judge's comments constituted an *Allen* [2] charge which impermissibly hastened and coerced the jury's verdict. Generally, where an issue is available to a defendant on direct appeal but not pursued, it is waived for post-conviction review. *Smith v. State* (1990), Ind.App., 559 N.E.2d 338, 342. However, a defendant may avoid waiver of an issue in a post-conviction proceeding if the failure to present the issue resulted from the ineffective assistance of counsel. *Id.; Collier v. State* (1991), Ind.

App., 572 N.E.2d 1299, 1301. Thus, as Kelley raises his claimed error as an issue of ineffective assistance of appellate counsel, we examine it from that perspective. *See McFarland v. State* (1991), Ind., 579 N.E.2d 610, 611.

In a post-conviction proceeding, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Hinkle v. State* (1992), Ind.App., 605 N.E.2d 200, 202. The post-conviction judge, as trier of the facts, is the sole judge of the weight of the evidence and the credibility of the witnesses. *Smith,* 559 N.E.2d at 344. We will not reverse an adverse determination on the merits unless the evidence is without dispute and leads inescapably to a conclusion opposite that reached by the trial court. *McBride v. State* (1992), Ind.App., 595 N.E.2d 260, 262.

A trial judge must conduct proceedings in a manner that "facilitates ascertainment of truth, insures fairness, and obtains economy of time and effort commensurate with the rights of both society and criminal defendant." *Proctor v. State* (1992), Ind., 584 N.E.2d 1089, 1091 (citation omitted). The fairness of a trial may be adversely affected by an *Allen* charge, which is a supplemental instruction suggesting to an apparently deadlocked jury that it should reach a verdict, or a similar admonishment which might encourage the jury to unduly compromise the verdict. *Clark v. State* (1992), Ind.App., 597 N.E.2d 4, 7, *reh'g denied, trans. denied* (citations omitted). The danger in such charges is that the jury will be coerced into reaching a verdict which is not truly unanimous. *Id.* However, this danger is not present when the trial court has no reason to believe that the jury is deadlocked. *Id.* Thus, the *Clark* court concluded that there could be no *Allen* violation in the absence of some evidence suggesting that the jury was deadlocked when the charge was read. *Id.* at 7–8.

Here, the post-conviction judge concluded that the jury was not deadlocked. Although the foreman reported that they had not yet

**2.** The term *"Allen* charge" comes from the case of *Allen v. United States* (1896), 164 U.S. 492, 17

S.Ct. 154, 41 L.Ed. 528.

reached a verdict, he did not indicate that the jury believed it would be unable to reach a verdict. While Kelley's trial counsel offered his opinion that the jury appeared to be deadlocked, he admitted that none of the jurors came close to saying that they could not reach a verdict. Thus, as we cannot say that the jury was deadlocked at the time the trial judge commented on sequestering the jury in a hotel, we conclude that there was no *Allen* violation.

Further, an examination of case law from other jurisdictions which have addressed the specific issue before us, although split as to whether such a charge is coercive, convinces us that there was no error in this particular case. In *People v. Huarotte* (1987), 134 A.D.2d 166, 520 N.Y.S.2d 756, the trial judge advised the jury that it had taken an unreasonable amount of time to deliberate and that if a verdict was not reached within forty-five minutes, the jury would be sent to dinner and possibly a hotel. The court also commented on the considerable time and expense involved in conducting a trial. While the reviewing court stated that charges which threaten the sequestration of the jury are coercive and prejudicial, this charge included additional material which made it, as a whole, one that clearly could have had a coercive effect on the jury. *See id.* [,520 N.Y.S.2d] at 760.

We find the reasoning in a line of Illinois cases to be particularly persuasive, wherein the courts employed a totality of the circumstances test to determine whether the language used actually interfered with the jury's deliberations and coerced a guilty verdict. *People v. Defyn* (1991), 222 Ill.App.3d 504, 165 Ill.Dec. 41, [49] 584 N.E.2d 220, 228. While the length of time a jury deliberated was only one factor to be considered, extremely brief deliberations after a reference to sequestration were held to invite an inference that the reference to sequestration coerced the jury into rendering a verdict. *People v. Friedman* (1986), 144 Ill.App.3d 895, 98 Ill.Dec. 638, 494 N.E.2d 760 (court concluded that the reference to sequestration influenced the jury since the verdict was returned five minutes after the trial court indicated that the jury would be seques-

tered). In *People v. Baggett* (1983), 115 Ill. App.3d 924, 71 Ill.Dec. 225, 450 N.E.2d 913, the defendant alleged error in the trial judge's advisement to the jury that it would have to make overnight arrangements in thirty minutes. The court noted that the jury had been deliberating for six hours and concluded that the comments removed rather than created any pressure on the jury to reach a verdict because they had been advised that they did not have to reach a decision that night. *Id.* [71 Ill.Dec. at 229, 450 N.E.2d] at 917. *See also People v. Thomas* (1989), 185 Ill.App.3d [1050] 134 Ill. Dec. 100, 542 N.E.2d 100, *rev'd on other grounds,* (1991), 143 Ill.2d 435, 159 Ill.Dec. 40, 575 N.E.2d 538 (period of thirty-five minutes after jury had been told that hotel accommodations would be arranged if no verdict was reached did not give rise to an inference of coercion).

Applying the totality of the circumstances approach to Kelley's case, we conclude that the judge's comments did not prejudice the jury's verdict. There is no evidence of any other type of comment from the judge except for the reference to sequestering the jury in a hotel. The jury's verdict came almost an hour after the discussion with the trial judge, which we deem to be a long enough period of time for jurors to reevaluate their views. While we do not recommend that trial judges routinely make such comments to juries, we do not find the judge's statement to be coercive. The judge did not tell the jury that it had to reach a verdict, suggest that any jurors should reconsider their positions, or make any reference to the resources expended in the trial. Instead, he simply informed the jurors that, as the hour was growing late, they would be provided accommodations for the night so that they could continue deliberations the next day, if necessary. Although Kelley emphasizes the jury's indication that it did not want to go to a hotel, this may well have been because the jurors believed that they were close to a verdict and therefore wished to continue deliberations. We cannot say that the evidence is such that it leads us to a result opposite that reached by the post-conviction judge.

580

As we conclude that the judge did not commit reversible error in his comments to the jury regarding sequestration in a hotel, we hold that Kelley was not denied the effective assistance of appellate counsel, because counsel is not ineffective for failing to present an issue on appeal that would have been unsuccessful. *Lyons v. State* (1992), Ind. App., 600 N.E.2d 560, 567.

Judgment affirmed.

SHARPNACK and STATON, JJ., concur.