**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Harold SILVERN, Defendant-Appellant.**

**No. 72-1133.**

United States Court of Appeals,
Seventh Circuit.

Reheard En Banc May 25, 1973.

Decided Aug. 7, 1973.

---

James P. Chapman, Chicago, Ill., Thomas P. Sullivan, Peter A. Flynn, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck, Arnold Kanter, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before ·SWYGERT, Chief Judge, DUFFY, Senior Circuit Judge, and KILEY, FAIRCHILD, CUMMINGS, PELL, STEVENS and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

This case has been reheard en banc in an attempt to establish greater certainty in district courts in this Circuit, and to conserve judicial energy by possibly avoiding appeals and retrials, in regard to the giving of the so-called Allen or "dynamite" charge as a supplemental instruction to a deadlocked jury.

The Allen instruction was approved by the Supreme Court in Allen v. United States, 164 U.S. 492, 501–02, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896) [1] and although no court has held that the' instruction itself is unconstitutional, it has had a stormy career.[2]

From 1963 to 1969, the Allen charge, supplemented by a second paragraph advising the jury that the case "must be retried" if the jury failed to reach a verdict, was generally given in this cir-

---

1. ". . . [I]n a large proportion of cases absolute certainty could not be expected; that, although the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impres-

sion upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority."

2. For a complete history of the Allen charge and attempts by the various circuits to deal with it, see United States v. Thomas, 146 U.S.App.D.C. 101, 449 F.2d 1177 (1971) (on rehearing en banc) and United States v. Bailey, 468 F.2d 652 (5th Cir. 1972), affirmed en banc, 480 F.2d 518 (5 Cir. 1973).

cuit as part of the Manual on Jury Instructions in Federal Criminal Cases (La Buy Instructions), 33 F.R.D. 523, 611 (1963).[3]

In United States v. Brown, 411 F.2d 930, 933–934 (7th Cir. 1969), we held as follows: [4]

Because the district courts within this Circuit have encountered difficulties in determining what precise language to include in a supplemental charge and when it should be given, it is important for this court to articulate with specificity our standards. In dealing with supplementary instructions, the primary task of an appellate court is to set the standards for the proper conduct of the trial judge faced with a hung jury. We have reconsidered not only the presently approved form of the Allen charge as set forth in the LaBuy Instructions, but the numerous judicial decisions and scholarly literature in this field critical of the Allen charge. We have concluded that it would serve the interests of justice to require under our supervisory power that, in the future, district courts within this Circuit when faced with deadlocked juries comply with the standards suggested by the American Bar Association's Trial By Jury publication. These standards specifically provide:

5.4   Length of deliberations; deadlocked jury.

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

(i) that in order to return a verdict, each juror must agree thereto;

(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(b) If it appears to the court that the jury has been unable to agree, the court may require the

---

3. "In a large proportion of cases absolute certainty cannot be expected. Although the verdict must be the verdict of each individual juror and not a mere acquiescence in the conclusions of others, yet you should examine the questions submitted with proper regard and deference for the opinions of each other, and you should listen to each other's opinions with a disposition to be convinced. It is your duty to decide the case if you can conscientiously do so. If a much larger number of jurors favor conviction, a dissenting juror should consider the reasonableness of his doubt when it makes no impression upon the minds of other jurors, equally intelligent and impartial, and who have heard the same evidence. If upon the other hand, the majority favors acquittal, the minority should ask themselves whether they might not rea-

sonably doubt the correctness of their judgment.

"If you should fail to agree on a verdict the case must be retried. Any future jury must be selected in the same manner and from the same source as you have been chosen, and there is no reason to believe that the case would ever be submitted to twelve men and women more competent to decide it, or that the case can be tried any better or more exhaustively than it has been here, or that more or clearer evidence could be produced on behalf of either side."

4. In Brandom v. United States, 431 F.2d 1391, 1399 (7th Cir. 1970), we added: ". . . [W]e reaffirm the future use by the District Courts of this Circuit of the standards and practices set out in *Brown*."

jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

\*　　\*　　\*　　\*　　\*　　\*

In order to avoid the potential for prejudice and coercion to which we have referred, district courts in this Circuit are required henceforth to charge deadlocked juries in both criminal and civil cases in a manner consistent with the recommended standards.

Although our 1969 language was designed to produce uniform practices within the circuit, it has not had that result, possibly because of the final words that deadlocked juries be charged "in a manner consistent with the recommended standards." Widespread deviations from and substantial supplements to the ABA standards have been considered to be "consistent with" them and "complying" with them. United States v. DeStefano, 476 F.2d 324 (7th Cir. 1973).

■ In this case, the supplemental instruction was exceedingly lengthy and went far beyond the ABA standards.[5] A majority of the court agrees with the panel of this court "under the facts of this case that neither the wording of the supplemental charge containing the ABA recommendations nor the timing and circumstances surrounding the charge violated defendant's constitutional rights" and "no prejudice occurred from the supplemental charge." United States v. Silvern, No. 72–1133 (7th Cir. February 27, 1973). The majority also agrees with the panel's disposition of the other issues in the case and we affirm the defendant's conviction.

However in the interest of judicial economy and uniformity, and under our supervisory power, district courts in this circuit are henceforth required to do the following in both civil and criminal cases.

5. "In a large portion of cases, absolute certainty cannot be expected. The verdict must be the verdict of each individual juror and not a mere acquiescence in the conclusions of others.
"You should examine the questions submitted with proper regard and deference for the opinions of each other. You should consult with one another and deliberate with a view to reaching an agreement if it can be done without violence to individual judgment.
"It is your duty to decide the case if you can conscientiously do so.
"In the course of deliberations a juror should not hesitate to reexamine his own views and change his opinion, if convinced that it is erroneous, but no juror should surrender his honest conviction as to the weight or the effect of the evidence solely because of the opinion of his fellow jurors or for the mere purpose of returning a verdict.
"If a much larger number of jurors favor conviction, the smaller number of jurors should consider the reasonableness of their doubt when it makes no impression upon the minds of other jurors who are equally intelligent and impartial and who have heard the same evidence.

"If on the other hand, a much larger number of jurors favors acquittal, the smaller number of jurors should ask themselves whether they might not reasonably doubt the correctness of their judgment.

"Likewise, the jurors in a majority favoring a finding for either party should ask themselves whether they might not reasonably doubt the correctness of their judgment, when it makes no impression upon the minds of the minority jurors equally intelligent and impartial as they are and who have heard the same evidence.

"If you should fail to agree on a verdict, the case is left open and undecided. Like all cases, it must be disposed of some time. Any future jury must be selected in the same manner and from the same source as you have been chosen, and there is no reason to believe that the case would ever be submitted to twelve men and women more competent to decide it, or that the case could be tried any better or more exhaustively than it has been here, or that more or clearer evidence could be produced on behalf of either side."

██ If a supplemental instruction is deemed necessary and provided that the following instruction has been given prior to the time the jury has retired, it may be repeated: [6]

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

Experience has now shown that variants in language or supplements or additions serve merely to proliferate appeals.[7]

If in any jury trial tried after thirty (30) days from this opinion a supplemental instruction relating to a deadlock is given other than in the above form, a resulting conviction will be reversed and remanded for a new trial.[8]

In addition, we suggest that the district courts consider whether the need for supplemental instructions may be reduced by sending into the jury room at the time the jury retires either a written copy or a tape recording of, together with equipment to enable the jury to hear, the complete instructions as given by the court.

Affirmed.

PELL, Circuit Judge (concurring in part and dissenting in part).

I concur in the affirmance of the defendant's conviction; however, since the opinion written by Judge Sprecher and approved by the majority of my brethren does establish new law in the Seventh Circuit,[1] I find myself free to record my disagreement with some of that new law. I do so with some reluctance because of my respect for the good judgment of my brothers and because my opinion with regard to the LaBuy-modified *Allen* charge apparently runs counter to a considerable body of scholarly thought elsewhere.

In all candor, I do not find myself disturbed by the charge given by Judge Austin in the trial below. Apparently

---

6. In the ABA Commentary to Section 5.4 (a), this instruction which is Instruction 8.11 of Jury Instructions and Forms for Federal Criminal Cases, 27 F.R.D. 39, 97–98 (1961) is suggested as "[i]llustrative of an instruction consistent with section 5.4(a)."

7. We realize that the ABA standard and illustrative instruction are not "as graven in stone" (United States v. Thomas, 146 U.S.App.D.C. 101, 449 F.2d 1177, 1188 (1971) and that the Committee on the Operation of Jury System of the Judicial Conference of the United States suggested a variant in paragraph (v) of the ABA standard, but unless and until we suggest any further change in the future, the instruction quoted in this opinion is the only deadlock instruction to be given.

8. See United States v. Fioravanti, 412 F.2d 407, 420 (3rd Cir. 1969): "... [H]ereafter this court will not let a verdict stand which may have been influenced in any way by an *Allen* charge." See also, Judge Goldberg's opinion concurring in part and dissenting in part in United States v. Bailey, 480 F.2d 518 (5th Cir. 1973): "I would permit no criminal conviction to stand in any future federal trial in this Circuit that does not strictly comply with the Standards recommended by the American Bar Association."

l. Although *obiter dicta* in the context of the case being appealed, law is nevertheless declared, preumably under the supervisory power of this court.

the majority of this court is really not too disturbed either because the charge was held not to violate the defendant's constitutional rights and not to be prejudicial. Nevertheless, apparently writing section one of a manual of instructions, the court states that deviation from the precise language of that instruction in the deadlocked jury situation is reversible error. I experience conceptual difficulty, even under our supervisory power, in establishing a standard from which no deviation may occur when we do so in the very case in which we hold that a deviation was neither constitutionally impermissible nor otherwise prejudicial.

My basic feeling is that the matter of writing instructions should remain in the hands of the trial judges. They are the ones at the battle site who are best in the position to judge which instructions are appropriate to the factual issues. Likewise they are best in the position to determine the nature, necessity, and verbiage of instructions to be given in connection with the functional aspects of jury deliberation, including those that may be necessary when it reasonably appears that a jury has reached the status of being deadlocked. If in any instruction the court misstates the law and the effect is prejudicial then, of course, a reversal would ordinarily follow. By prescribing the exact language in which a trial judge may instruct in the deadlocked situation we are, it seems to me, substantially circumscribing the discretionary flexibility needed by the trial judge for effective trial administration. It is one thing to find no error in an instruction which has been given in a trial, thereby putting our tacit approval on it, and an entirely different matter to engage in *a priori* processes of word fixation.

In considering the desirability in our trial procedures of the giving of an instruction such as the one given by Judge Austin, we should look at it in the context of the occasion in which it is utilized. While we probably should not say as an absolute, *necessitas est lex tempor-*

*is et loci*, because our system of justice does not mandatorily require that every jury should render a verdict, nevertheless it seems to me that it is desirable that a disposition should be reached if it can be without compromise of honest conviction or violence to individual judgment. I find nothing wrong in Judge Austin's admonition that "[i]t is your duty to decide the case if you can conscientiously do so." Indeed, the ABA recommendations do not deny the desirability of giving an additional instruction to the deadlocked jury with regard to their duty to deliberate with a view to reaching an agreement.

In the context of the situation of the deadlocked jury it appears to me that three basic situations might be involved. The first of these is where the jury is evenly or approximately evenly divided. Here, if the deliberations have been of some substantial duration it appears to me that there is not sufficient "dynamite" in the challenged charge to cause the situation to change. As a matter of fact, the challenged charge is primarily concerned with the situation where there is a small minority holding out against a majority. The remaining two basic situations are found in the latter posture. While there may be subcategories, and at the risk of oversimplification, the minority jurors are either reasonable or unreasonable. If the obdurateness of the minority is of the latter type, whether flowing from corruption or from what some trial lawyers inelegantly refer to as pigheadedness, it seems unlikely that the challenged charge will have much blasting effect. If it did, I cannot say that this would necessarily be a bad result, at least as long as reason is to play some part in jury determinations.

Ultimately then we are concerned with those jurors who are reasonable but are conscientiously unconvinced that the majority position is correct. We would all agree, I think, that no juror, but particularly not the type of juror just described, should feel that he is being pressured by the trial judge to agree to a verdict just for the sake of closing out

the case. I do not find such pressure in the challenged charge. It is axiomatic that no one instruction encompasses all of the law in a case. Likewise, each paragraph of a particular instruction should be considered as a part of the whole. Thus, even though the jurors in the challenged instruction are reminded that absolute certainty cannot be expected (which is probably a truism) and that the case will be left open and undecided if a verdict is not reached (also true), on balance the jurors are sufficiently instructed that they do not have to surrender their honest convictions merely for the purpose of returning a verdict.

Looking at the overall impact of the challenged instruction, it appears to me that it advises jurors that as reasonable persons they should take another look at whether their position is reasonable and correct. It also is to be noted that this admonition is directed at the majority as well as the minority.

If we become embroiled in semantical niceties in looking at instructions, niceties which have arguably little impact upon the lay people composing juries,[2] then I would tend to think that the ABA based instruction (which has been now laid down as the only instruction which can be given to a deadlocked jury) could be interpreted by the average juror as being a "bugle call" for a hung jury. That is no more to be desired than is an instruction which improperly pressures a unanimous decision.

Further, I cannot agree with the majority decision in two other respects.

The requirement that the deadlocked instruction can only be given when it is first given as a part of the regular charge exceeds the ABA standard "may give or repeat . . . ." Secondly, and this follows from what I have already said, I would in any event include in the prescribed instruction the words which were *recommended* by the Committee on the Operation of the Jury System of the Judicial Conference of the United States (footnote 7 of the majority opinion):

"(v) that each juror who finds himself in the minority should reconsider his views in the light of the opinions of the majority, and each juror who finds himself in the majority should give equal consideration to the views of the minority."

The committee's comments are illuminating:

"This additional paragraph makes it perfectly clear that instructions to take the views of other jurors into account are not directed solely to minority jurors and also reflects the viewpoint of several leading jurists."

I concur in the suggestion of the majority opinion that consideration be given to letting the jury have the instructions during its deliberation.

STEVENS, Circuit Judge (concurring).

Recognizing the importance of an unambiguous statement of the rule to be applied in this circuit in the future, I concur in the clear, straight-forward opinion which Judge Sprecher has writ-

---

2. Judge Arterburn, now Chief Judge, of the Indiana Supreme Court put the matter aptly in Hendrix v. Harbelis, 248 Ind. 619, 230 N.E.2d 315 (1967), as follows: "Instructing a jury is a most difficult and complex process. It is generally conceded that there has been an overemphasis placed upon the wording and refined meaning of instructions which far exceed their actual effect upon the jury. When an instruction has to be read and reread by a legally trained mind to catch a slight variation or error in its meaning, it is difficult to believe that a jury of laymen could have been misled. Words are mere signs or symbols of meaning and thought, which are never exact. We strive with inexact tools to work out refinements and precise lines in statements of thoughts and ideas, but are never able to reach exact perfection. In the writing of instructions, we are eternally confronted with attempts and failures at exactitude, and we must keep this human frailty in mind when we examine the language of instructions." 230 N.E.2d at 319.

ten. Candor, however, compels me to add two brief comments.

1. In view of the references to United States v. DeStefano, 476 F.2d 324 (7th Cir. 1973), in both the majority and dissenting opinions, it may be of significance to record the fact that I cast one of the four votes in favor of granting the petition for rehearing *en banc* in that case. The reason for my vote was my concern that the panel opinion had incorrectly decided that the failure of the district court to subpoena an occurrence witness violated the defendant's right to compulsory process. *Id.* at 329–331.[1]

2. I have not yet been able satisfactorily to explain to myself how this circuit can lawfully announce that an instruction to a jury which the Supreme Court has specifically and squarely held is not reversible error in federal criminal trials shall in the future constitute reversible error when given in such trials conducted in the Seventh Circuit. Possibly the answer is confidence that Supreme Court review of a decision such as this would lead to an overruling of *Allen.* That confidence may well be misplaced, cf. Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152; even if warranted, it does not provide a completely satisfactory answer to a difficult question.

SWYGERT, Chief Judge (dissenting in part, concurring in part).

I am in full agreement with the preservation of our decision in United States v. Brown, 411 F.2d 930 (7th Cir. 1969), and with the majority's decision that any deviation from it will henceforth result in a reversal. However, I dissent from the majority's failure to find reversible error by the district judge's refusal to follow our mandate in *Brown.* The majority seems to excuse the judge by an allegedly vague sentence in the *Brown* opinion: "In order to avoid the potential for prejudice and coercion to which we have referred, district courts in this Circuit are required henceforth to charge deadlocked juries in both criminal and civil cases in a manner consistent with the recommended standards." 411 F.2d at 934. After citing this sentence the majority says: "Although our 1969 language was designed to produce uniform practices within the circuit, it has not had that result, possibly because of the final words that deadlocked juries be charged 'in a manner consistent with the recommended standards.' Widespread deviations from and substantial supplements to the ABA standards have been considered to be 'consistent with' them and 'complying' with them. United States v. DeStefano, 476 F.2d 324 (7th Cir. 1973)." The citation of *DeStefano* is unfortunate. That case dealt with deviations from the *Brown* standards closely similar to those seen here and indulged in by the same judge. More important is the fact that a majority of this court agreed but were denied the opportunity to rehear it *en banc,* since the defendant DeStefano died prior to the rehearing. Therefore, I submit, the holding of the majority of the panel in *DeStefano* is a questionable precedent.[1] However, if the reference to *DeStefano* should be interpreted as an assertion that "widespread deviations from and substantial supplements to the ABA standards" have occurred throughout the Circuit since *Brown,* there is

<hr/>

1. That case, incidentally, suggests a difference between a mandate directing the trial court to take action "consistent with" as opposed to "not inconsistent with" a given standard. In both *DeStefano* and *Silvern* instructions which were consistent with the ABA standards were given, as expressly required by *Brown.* The issue was whether additional instructions, not required by *Brown* but permitted by *Allen,* were inconsistent with a lawfully

required standard, and if so, whether that inconsistency was reversible error.

1. Judge Fairchild dissented in the *DeStefano* opinion and the order of this court dated April 20, 1973 reads in part:
    It is ordered that the appeal is dismissed as moot and the district court is directed to enter an order vacating the judgment of conviction and dismissing the indictment as moot.

scant support for such an interpretation. According to the appeals that have been heard, only two judges within the Circuit have deviated from the ABA standards mandated by *Brown*.[2]

That the district judge was confused or had difficulty with the alleged vagueness of the language in *Brown* is belied by the record. Because the point is important I quote a large portion of the colloquy between the judge and counsel which preceded the jury's reception of the supplemental instruction.[3]

It is clear from the record that the trial judge—despite the lip service he paid to *Brown* and its requirement of a determination that this is consistent with the recommended standards and here is your last sentence of the opinion.

2. The trial in Brandom v. United States, 431 F.2d 1391 (7th Cir. 1970), predated the *Brown* decision. *DeStefano* and the case at bar were tried by the same judge; one other deviation occurred in United States v. Baranski, No. 71–Cr–576, (N.D. Ill.).

3. MR. SULLIVAN: With regard to the last part about the—another jury, you should not think that some other group—
THE COURT: All right.
MR. SULLIVAN: Now, that is not in the Brown case and I think it harkens back to the very kind of instruction that has been criticized and condemned.
THE COURT: No, the instruction that has been criticized and condemned, and I have lifted this from that case, the one that is condemned states that, "If you should fail to agree on a verdict, the case is left open—another jury must decide it." That is the way that reads.
It has been suggested by the Court of Appeals that I use the phrase which I have, "is left open and undecided."
MR. SULLIVAN: But all that follows that about other people and other—from the community, and you must not assume it is going to be tried differently or more evidence, in Brandom vs. United States, 431 Fed.2d 1391, decided last year—
THE COURT: Seventh Circuit?
See, we have a special rule in the Seventh Circuit. You can give the old Allen Charge in every other Circuit but here but [Brown] says that we are going to be unique . . . I wouldn't be surprised if no other Circuit follows the Seventh Circuit in regard to the Allen Charge. So I am conforming to the revised—you have the balance of this opinion?
MR. SULLIVAN: It is all there, Judge. I tore off part of a page that deals with a different case.
THE COURT: This is the last sentence and this is what I was looking for, "In order to avoid the potential for prejudice and coercion, to which we have referred, the District Courts in this Circuit are required henceforth to charge deadlocked juries in both criminal and civil cases in a manner consistent with the recommended standard." I have made a

MR. SULLIVAN: Well, in the Brandom case—
THE COURT: From what Circuit?
MR. SULLIVAN: The Seventh. And as I understand this opinion, this was the original charge, not a recharge after the jury didn't agree, the court said many of the same things that you have said; "If you fail to agree on the verdict, the case is left open and undecided, and like all cases it must be disposed of some time. If the case is retried a future jury must be selected in the same manner and from the same source as you have been chosen."
THE COURT: Is that condemned in the Brandom case?
MR. SULLIVAN: No, not outright condemned. I would like to read it to you so that we can all make a judgment.
THE COURT: All right.
MR. SULLIVAN: (Continuing) "—and from the same source as you have been chosen, and there is no reason to believe that the case would ever be submitted to twelve men or women more competent to decide this case than those of you who compose the present jury. There is no reason to believe that there will be more or clearer evidence produced at a future trial, therefore, I urge you to deliberate in this case with the disposition to be convinced—"
THE COURT: I am not going to say that.
MR. SULLIVAN: All right. "Therefore, I urge you to deliberate in this case with the disposition to be convinced, at the same time directing you that your verdict must be a conscientious decision of each individual juror."

\*　　\*　　\*　　\*　　\*

MR. LAPIDUS: The case was affirmed, your Honor. That instruction was affirmed, by the way, in that case.
MR. SULLIVAN: Well, here is what they said—they affirmed in Brown, too, but—
THE COURT: But for the reason that the instruction had heretofore been approved by the Seventh Circuit and then they turned turtle in the Brown case.

jury "charge . . . in a manner consistent with the recommended standards"—deliberately incorporated most of the *Allen* charge which had been condemned by this court in *Brown*. If it is true that our mandate in *Brown* of consistent adherence to the ABA standards is sufficiently ambiguous to authorize a range of equivalent jury charges, the broadest reasonable reading of *Brown* would not approve what the judge did here. To give, as the judge himself put it, "a modified charge, *modified from the Allen charge*," was a clear violation of our direction in *Brown* (emphasis supplied).

The majority's opinion on rehearing does not address itself to the coercive elements of the charge given in this case, nor to their likely prejudicial effect. Most of the coercive admonitions contained in the *Allen* charge were given. See note 5, majority opinion. Moreover, it does not deal with the untimeliness of the supplemental charge. After the jury had deliberated for fourteen hours on two successive days, the trial judge *sua*

MR. SULLIVAN: Right, but then as I say, this was not part of the supplemental charge.

In Brown the court held that "The defendant failed to show that the supplemental court charge was sufficiently prejudicial to warrant reversal. In the instant case the instruction in question was part of the trial court's general instruction. Even more than in Brown the instruction here given before this court's decision in Brown contains insufficient interference with the jury's free deliberation so as to create a prejudicial atmosphere. We reaffirm the position taken in Brown that the Allen type charge may contain elements of potential coercion and is in conflict with the American Bar Association's recommended instruction. Accordingly, we reaffirm the future use by the District Courts of this Circuit of the standards and practices set out in Brown." End of Judge Will's opinion.

THE COURT: The Court of Appeals, if necessary, will—the record will clearly demonstrate that I have been adequately warned by you of the consequences of the heinous thing that I am about to commit.

*sponte* advised counsel that he proposed to give the jury a supplemental charge. The jury, however, was deadlocked neither then nor after the judge and counsel had discussed the proposed supplemental charge, for the first opinion in this case is in error in its assertion that the jury "had informed the judge that they were in fact deadlocked." [4] Immediately before he put his proposal into effect, the judge asked the jury whether they had "yet arrived at a verdict." He received a response of "not yet." This phrase may hardly be taken to justify the elaborate charge which followed. In *Brown* we repeatedly laid stress on the fact that the ABA recital was to be given to deadlocked juries. It may be true, I admit, that an instruction following *Brown* is appropriate even if a jury has not deliberated to the point of deadlock, provided it has consumed in unsuccessful deliberation an amount of time which is patently out of proportion to the difficulty of the issues in the case before it and the amount of testimony taken at trial. When the proper time

4. The pertinent record, in its entirety, is as follows:

THE COURT: As of this moment, gentlemen, there has been no verdict returned.

I propose to give them a modified charge, modified from the Allen Charge, and I will tell you what I am going to say to them:

\* \* \* \* \*

THE COURT: The Court of Appeals, if necessary, will—the record will clearly demonstrate that I have been adequately warned by you of the consequences of the heinous thing that I am about to commit.

Get the jury, Mr. Marshal.

(The following further proceedings were had in open court in the presence and hearing of the jury:)

THE COURT: You may be seated, ladies and gentlemen.

Who is the foreman?

JURY FOREMAN: I am, sir.

THE COURT: I am going to ask you one question that can be answered yes or no.

Have you yet arrived at a verdict?

JURY FOREMAN: Not yet, sir.

THE COURT: I have one further instruction for you ladies and gentlemen.

. . .

has passed, the trial judge should then make discreet inquiry of the jurors as to the status of their deliberations. If they estimate that a verdict is close at hand, their instruction under *Brown* is clearly inappropriate. This case—broad in its issues, arguably close on its facts, and lengthy in its trial [5]—fails to fit the first formula after fourteen hours of deliberation, see United States v. Flannery, 451 F.2d 880 (1st Cir. 1971), Burroughs v. United States, 365 F.2d 431 (10th Cir. 1966), *but cf.* Thaggard v. United States, 354 F.2d 735 (5th Cir. 1966), and the failure of the trial judge to ascertain the probable imminence of a verdict is unquestionably clear. The instruction modified from *Allen*, then, is not the only reason to reverse this case.

---

5. The defendant was tried on ten counts of mail fraud and one of conspiracy. The trial encompassed ten days of testimony.