# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-3561

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

FREDERICK DEGRAFFENRIED,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 717—**David H. Coar**, *Judge.*

———————

ARGUED MAY 27, 2003—DECIDED AUGUST 11, 2003

———————

Before BAUER, POSNER, and COFFEY, *Circuit Judges.*

BAUER, *Circuit Judge.* A jury found Frederick Degraffenried guilty of being a felon in possession of a firearm, and the district court sentenced him to 262 months' imprisonment. On appeal, Degraffenried contends that the district court erred in its handling of a note from the jury. Degraffenried also asserts that the court improperly limited his cross-examination of Detective Patrick O'Donovan. For the reasons stated herein, we affirm.

## BACKGROUND

On the evening of May 16, 2001, Nakia Stanley heard a gunshot in the lot next to her home and saw Fabian Patillo

hobbling around the side of her home, in obvious pain. Frightened, Stanley called 911. Chicago Police Department Officers Kevin Cole and Daniel Parrilli responded and saw Frederick Degraffenried running from the scene with a sawed-off rifle. Officer Cole chased Degraffenried into a building. Degraffenried surrendered moments later and Cole recovered the gun.

Meanwhile, Detective Patrick O'Donovan, also responding to the 911 call, located Patillo, the man who had been shot. Patillo eventually told O'Donovan that he had accidentally shot himself in the foot and that Degraffenried had taken the gun to hide it. Patillo was treated at Mount Sinai Hospital, where he identified the gun retrieved by Officer Cole as the gun with which he had shot himself. O'Donovan interviewed Degraffenried, who confirmed that Patillo had shot himself and that he (Degraffenried) attempted to conceal the gun.

O'Donovan documented Degraffenried's statement in a General Progress Report. ATF Agent Susan Bray, the case agent, provided the prosecutors with a copy of O'Donovan's Supplemental Case Report. Bray mistakenly believed the Supplemental Case Report incorporated O'Donovan's handwritten notes contained in the General Progress Report. The officials handling the case did not realize the mistake until March 13, 2002, two weeks before the scheduled trial date. Upon receiving the newly discovered information, the prosecution immediately faxed a copy of the General Progress Report to defense counsel.

In light of the delay, the court granted a continuance of the trial date, and on June 4, 2002, held a hearing on the motion to suppress Degraffenried's statement contained in the General Progress Report. After hearing testimony from Cole, O'Donovan, and Degraffenried, the court denied the motion.

Prior to the trial testimony of O'Donovan, the prosecution moved in limine to prevent any cross-examination of

O'Donovan regarding the timing of the prosecution's production of the General Progress Report to defense counsel. The district court granted the motion.

The trial began on June 5, 2002 and finished at noon the following day. After approximately three hours of deliberations, the jury sent the judge a note. The judge told counsel, "I got a note from the jury saying that they are at impasse. I'm reluctant to share the note with you because it discloses what the numerical division is among the jurors. The note also says that one juror does not want to discuss it further, so that's where they are." Defense counsel stated, "I think it's important that we see the whole contents [sic] of the note." The judge declined to divulge the entirety of the note. Instead, he sent a note to the jury stating, "Members of the jury, I've read your note. Please continue deliberations."

Following a recess and additional discussion about the issue, the judge decided to read the entire note to counsel. The note stated:

> We are at an impasse. We have two people who do not vote with the majority. One of these two has said repeatedly that he will never change his mind. The disagreement turns on the believability of the police officers' testimonies. The majority believe the testimony. The minority believe that it was fabricated to get a conviction. These two jurors have strong reasonable doubt that will not be extinguished. One of the . . . does not want to discuss it further.

The judge subsequently asked counsel what they felt was the most appropriate action. The prosecution stated that the court's response to the note was proper. Defense counsel responded, "The only thing that I might have wanted was the *Silvern* instruction, just because the *Silvern* instruction includes the fact that the jurors should maintain their own personal beliefs, but I think it's a bit late for that." Degraffenried was not present in the courtroom at

any time when the judge told counsel about the note or when he disclosed the contents of the note.

On June 7, 2002, the jury found Degraffenried guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. § 924(e), and not guilty of possessing an unregistered sawed-off rifle. Degraffenried filed a motion for a new trial, which was denied. The judge admitted error in discussing the note outside the presence of Degraffenried, but found the error harmless. The judge sentenced Degraffenried to 262 months' imprisonment, with three years supervised release. Degraffenried appeals.

## ANALYSIS

We first address the error in discussing the jury's note outside the presence of Degraffenried.

A criminal defendant has the right to be present at every stage of the trial. Fed. R. Crim. P. 43(a); *see also Rogers v. United States*, 422 U.S. 35, 39 (1975). A judge's response to a note from the jury is one of those stages. *United States v. Coffman*, 94 F.3d 330, 335-36 (7th Cir. 1996). As we noted in *United States v. Neff*, 10 F.3d 1321, 1324 (7th Cir. 1993), when a judge receives a communication from the jury, he should either follow the procedures set forth in *Rogers v. United States*, 422 U.S. 35 (1975), or obtain a clear and knowing waiver on record from the defendant himself. There is no dispute that the proper procedures were not followed, as the judge himself admitted; the remaining question is whether the error was harmless.

An error is harmless if it does not affect "substantial rights." Fed. R. Crim. P. 52(a). A defendant's absence from a stage of the trial is harmless if the issue involved is not one "on which counsel would be likely to consult [the defendant]," or which the defendant, "if consulted, would be likely to have an answer that would sway the judge.*"*

*United States v. Silverstein*, 732 F.2d 1338, 1348 (7th Cir. 1984).

Degraffenried claims that if present, "he may have suggested a response that was contrary to the district court's response which allowed the jury to continue to deliberate without requesting a mistrial." We are not persuaded. The jury's note was straightforward, issued less than four hours after deliberations began. While the judge's methodology was improper, his response was not. We cannot agree that defense counsel would have consulted Degraffenried about the jury's note. Moreover, given the temporal proximity to the start of deliberations and the legal nature of the issue, we fail to see how a response from Degraffenried would have swayed the judge. Thus, the failure of the court to secure Degraffenried's presence was harmless error.

We next consider the court's handling of the note itself. The judge's response to the jury's note was erroneous, as the government concedes. *Rogers v. United States*, 422 U.S. 35 (1975), instructs that a communication from the jury should be answered in open court and that counsel should be allowed to respond before the judge resolves the situation. *Rogers*, 422 U.S. at 39. Because this procedure was not followed, error was committed. We again review for harmless error. *United States v. Pressley*, 100 F.3d 57, 59-60 (7th Cir. 1996).

Degraffenried contends that if the judge had disclosed the entirety of the note and conferred with him before responding to the jury, counsel would have asked the judge to repeat the *Silvern* instruction. *See United States v. Silvern*, 484 F.2d 879 (7th Cir. 1973). This supplemental jury instruction provides, *inter alia*, that jurors not "hesitate to change their minds [and] not to surrender honest beliefs still thought to be correct." *United States v. Rodriguez*, 67 F.3d 1312, 1320 (7th Cir. 1995). A *Silvern* instruction is appropriate only when the court has concluded that a jury is

deadlocked. *United States v. Miller*, 159 F.3d 1106, 1110 (7th Cir. 1998).

To begin with, a *Silvern* instruction was given before the jury began deliberations. Second, the jury had been deliberating for less than four hours when it issued the note. The foreman's opinion that the jury was deadlocked does not require the judge to give a *Silvern* instruction; it is also within the court's discretion to simply tell the jury to continue deliberating.

In addition, the substance of the judge's response was entirely proper: "Members of the jury, I've read your note. Please continue deliberations." It was not coercive and its language was neutral. Such an instruction "carrie[s] no plausible potential for coercing 'the jury to surrender their honest opinions for the mere purpose of returning a verdict.'" *United States v. D'Antonio*, 801 F.2d 979, 983-84 (7th Cir. 1986) (quoting *United States v. Thibodeaux*, 758 F.2d 199, 203 (7th Cir. 1985)). Similarly, in *United States v. Miller*, 159 F.3d 1106 (7th Cir. 1998), the judge responded to a communication from the jury with an instruction to continue deliberating and without a *Silvern* instruction. We found the judge acted properly because the response was neutral and not coercive. *Id.* at 1111; *see also United States v. Coffman*, 94 F.3d 330 (7th Cir. 1996); *United States v. Kramer*, 955 F.2d 479 (7th Cir. 1992). Degraffenried offers no reason for us to depart from this long line of precedent.

Degraffenried's final argument concerns the district court's decision to limit the scope of the cross-examination of Detective O'Donovan. Degraffenried says that he was denied the opportunity to fully cross examine O'Donovan about the General Progress Report and, thus, was prevented from attacking O'Donovan's credibility.

The Sixth Amendment guarantees criminal defendants the right to cross examine witnesses but a trial court has discretion to place reasonable limits on cross-examinations.

*United States v. Jackson*, 51 F.3d 646, 652 (7th Cir. 1995). In determining the standard of review, we "distinguish between the core values of the confrontation right and more peripheral concerns which remain within the ambit of the trial judge's discretion." *United States v. Saunders*, 973 F.2d 1354, 1358 (7th Cir. 1992). Limiting the right to cross examine for impeachment purposes involves a peripheral concern. *United States v. Nelson*, 39 F.3d 705, 709 (7th Cir. 1994); *United States ex rel. Ashford v. Dir., Ill. Dep't of Corr.*, 871 F.2d 680, 683 (7th Cir. 1989). Consequently, we review the district court's decision to limit the cross-examination of O'Donovan for an abuse of discretion. *United States v. Graffia*, 120 F.3d 706, 712 (7th Cir. 1997).

The district court precluded Degraffenried from asking about when the prosecution provided the notes in the General Progress Report to defense counsel. Degraffenried maintains that such a limitation deprived the jury of the opportunity to determine O'Donovan's credibility. We fail to see how O'Donovan's credibility could be attacked on a matter not within his control or firsthand knowledge. We give the district court wide latitude when it limits cross-examination to avoid confusion. *United States v. Sasson*, 62 F.3d 874, 882 (7th Cir. 1995). Moreover, the court permitted questioning about O'Donovan's knowledge of the General Progress Report; Degraffenried inquired about the date O'Donovan turned over the notes, to whom he gave the notes, and the circumstances under which O'Donovan obtained Degraffenried's statement. Thus, Degraffenried had opportunities to explore any possible motive or bias regarding the handling of the report. The subject matter the court limited (the date the prosecution gave the General Progress Report to defense counsel) is simply irrelevant to anything involving O'Donovan. For these reasons, we find that the district court's limitation of the cross-examination of O'Donovan was not an abuse of discretion.

## CONCLUSION

The decision of the district court is AFFIRMED.


**A true Copy:**
  **Teste:**


_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*